**BLUMENTHAL, NORDREHAUG & BHOWMIK**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

**UNITED EMPLOYEES LAW GROUP**
  Walter Haines, Esq. (CSB #71075)
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON BARCIA; RANDALL LEWIS; on behalf of themselves, and on behalf of all persons similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>CONTAIN-A-WAY INC., a California corporation, doing business as NEXCYCLE and 20/20 RECYCLE CENTERS,<br><br>   Defendants. | CASE No. **07 CV 0938 IEG (JMA)**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ENTRY OF FINAL JUDGMENT AND ORDER DISMISSING ACTION**<br><br>District Judge: Hon. Irma E. Gonzalez<br>Courtroom:  1, 4th Flr<br><br>Hearing Date:  March 2, 2009<br>Hearing Time:  10:30 a.m.<br><br>Action Filed:  May 23, 2007 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    THE SETTLEMENT BEFORE THE COURT  . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS
       COURT TO GRANT FINAL APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE  . . . . . . . . . . 11

       A.    The Test For Fairness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       B.    The Settlement Satisfies the Test For Fairness  . . . . . . . . . . . . . . . . . . . . . 12

             1.    The Investigation and Discovery are Sufficient to Allow Counsel
                   and the Court to Act Intelligently . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             2.    The Settlement was Reached Through Arm's Length Bargaining  . . . . 14

             3.    Counsel is Experienced in Similar Litigation  . . . . . . . . . . . . . . . . . . . 16

             4.    There are No Objectors to the Settlement and Few Opt-Outs . . . . . . . . 17

             5.    The Risk, Expense, Complexity and Likely Duration of
                   Further Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

             6.    The Amount Offered in Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1

## TABLE OF AUTHORITIES

2

**Cases:**

**Page**

3

*Armstrong v. Board of School Directors*,
   616 F.2d 305, 325 (7th Cir. 1980)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

4

*Basco v. Wal-Mart Stores, Inc.*,
   216 F. Supp. 2d 592 (E.D. La. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

5

*Chavez v. Netflix*,
   162 Cal. App. 4th 43 (2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

6

7

*Clausnitzer v. Federal Express Corp.*,
   248 F.R.D. 647 (S.D. Fla 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

8

*Cotton v. Hinton*,
   559 F.2d 1326, 1331 (5th Cir.1977)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

9

10

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
   630 F. Supp. 482, 489 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

11

*Glass v. UBS Fin. Servs.*,
   2007 U.S. Dist. LEXIS 8476 (N.D.Cal. Jan. 27  2007)  . . . . . . . . . . . . . . . .  13-14, 20

12

13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1026 (9th Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

14

*In re Austrian & German Bank Holocaust Litigation*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

15

16

*In re Dept. Of Energy Stripper Well Exemption Litig.*,
   653 F.Supp. 108, 115 (D.Kan.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

17

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. Lexis 13555 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

18

19

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322, 324 (5th Cir. 1984)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

20

*Kirkorian v. Borelli*,
   695 F. Supp. 446, 451 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

21

22

*Laskey v. Int'l Union*,
   638 F.2d 954 (6th Cir. 1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

23

*Lopez v. City of Santa Fe*,
   206 F.R.D. 285, 288 (D.N.M. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

24

25

*Lyons v. Marrud, Inc.*,
   Fed. Sec. L. Rep. (CCH) ¶¶ 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . .  12

26

27

28

*Marcus v. State of Kansas*,
209 F. Supp. 2d 1179 (D.Kan. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Officers for Justice v. Civil Service Com'n*,
688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-11

*Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.*,
322 F.Supp. 834 (E.D. Pa 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Proctor v. Allsups Convenience Stores, Inc.*,
2008 U.S. Dist. Lexis 33707 (N.D. Tx 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414, 424-25 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reed v. General Motors Corp.*,
703 F.2d 170, 175 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Waits v. Weller*,
653 F.2d 1288, 1291 (9th Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*West Virginia v. Chas Pfizer & Co.*,
314 F.Supp 710 (S.D.N.Y. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Williams v, MGM-Pathe*,
129 F.3d 1026 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Yeagley v. Wells Fargo & Co.*,
2008 U.S. Dist. Lexis 5040 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Statutes, Rules and Regulations:**

California Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Labor Code
§ 204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 1198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 2698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29 U.S.C. § 216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

**Secondary Authorities:**

Newberg & Conte, *Newberg on Class Actions*, (3d ed. 1992) §11.41, pp. 11-91 . . . . . . . . . 8

iv

Plaintiffs Ramon Barcia and Randall Lewis ("Plaintiffs") respectfully submit this memorandum of points and authorities in support of their motion for final approval of the Class settlement and for entry of judgment and order dismissing action.

## I.    INTRODUCTION

During the relevant time period of 2003 through 2008, Defendant Contain-a-Way, Inc., doing business as Nexcycle (hereinafter "Defendant" or "Nexcycle") was in the business of recycling aluminum, glass and plastic through small kiosks or trailers, usually located behind large grocery stores or other retail stores. The recycling sites were manned by "Site Attendants" or "Floaters" who received the recyclables, weighed the materials, and paid clients with cash or credit according to the weight and material price.[1] The recycled materials were then stored and compressed at the recycling sites to be periodically picked up by the Defendant. These employees were required to perform a series of tasks before the site could be opened for the public and after the site was closed. Plaintiffs contended that these employees were paid wages according to the schedule for the site, which did not account for the actual time spent performing the opening and closing tasks. In addition, Plaintiffs contend that they were denied certain profit-sharing 401k benefits to which they were entitled.

The settlement reached is fair, adequate and reasonable to the Class and should be finally approved. This settlement valued at $2.5 million is an excellent result and provides the Class Members with the opportunity to receive a substantial recovery of thousands of dollars to each claimant. This result is particularly remarkable in light of the fact that there were no records showing the precise amount of regular time worked by the Class Members but not compensated by the Defendant. Further, certification in this case was far from certain in this off-the-clock wage case as some courts have denied class certification in cases involving similar facts.

The parties to this Action have reached a settlement which this Court has preliminarily

---

[1] There is no meaningful difference between the work performed by Site Attendants and Floaters. Site Attendants are employees who have a regular recycling site and Floaters are those employees who work at different sites as needed and directed by Defendant.

MEMO OF P&A IN SUPPORT MOTION FOR FINAL APPROVAL OF SETTLEMENT

approved by Order dated August 15, 2008.  In accordance with the preliminary approval order, the required notice of the proposed settlement and claim form were mailed via first class mail to the 2,385 members of the Class by the claims administrator.[2]  (See Declaration of Tricia Solorzano at ¶¶ 3-7, filed herewith).  In response to this notice, not one member of the settlement Class has objected to the settlement, 478 members submitted timely claim forms, and 56 opted out of the settlement.[3]  (Decl. Solorzano at ¶¶ 8-10).  As set forth below, Plaintiffs respectfully submit that the settlement of the litigation should be finally approved.[4]

On April 19, 2007, Plaintiff Randall Lewis filed a complaint in the Superior Court for the County of San Diego, State of California (the "Court") as Civil Action No. 37-2007-00065322, entitled Randall Lewis, et al. v. Contain-A-Way, et al., on behalf of Plaintiff Lewis and all other similarly situated site attendant employees, seeking, among other things, unpaid wages and penalties for missed rest breaks.  (Blumenthal Decl at ¶ 6(a).)

On May 23, 2007, Plaintiff Ramon Barcia filed this lawsuit in the United States District Court for the Southern District of California which was captioned Ramon Barcia and Matthew Carter v. Contain-a-Way, Inc., d/b/a Nexcycle and 20/20 Recycle Centers (the "Action").  The Action was brought on behalf of Plaintiff Barcia and all other similarly situated site attendant and floater employees, seeking, among other things, unpaid wages and penalties for missed rest breaks as well as a claim under ERISA for benefits.

Following extensive discovery in both the state and federal lawsuits, Plaintiff Barcia

[2] 1,972 reminder notices were also mailed via first class mail to the members of the Class.

[3] 28 members submitted untimely claim forms.  (Decl. Solorzano at ¶8). At the present time, a total of 455 claims are being approved for payment and the total number of weeks worked for approved claims is 25,273.  The total number of weeks worked for all class members is 99,703. The approximate amount per work week each claimant is entitled to is $15.97, for a total of approximately $403,609.81 in approved unpaid wage claims.  (Decl. Solorzano at ¶13).

[4] Filed contemporaneously herewith is the Memorandum in Support of Award of Attorneys' Fees, costs and Plaintiffs' service award.

moved to amend the complaint to add Randall Lewis to the Action.[5]  Following the addition of Plaintiff Lewis to this Action, the state action was dismissed without prejudice for the purpose of proceeding solely in the federal court where all claims could be redressed.  The complaint was also amended to add a claim under the Private Attorney Generals Act ("PAGA"), Cal. Labor Code §2698, *et seq*.

The Action therefore currently asserts claims for violations of the California Labor Code §§ 204, 210, 218, 226, 226.7, 510, 512,  1194 and 1198, the Fair Labor Standards Act, 29 U.S.C. § 216,  and the California Business and Professions Code §17200, along with claims for benefits due under ERISA, 29 USCS §§ 1001 et seq., and for civil penalties under PAGA.  The Named Plaintiffs allege that individuals employed by Nexcyle as recycling site attendants and floaters were not paid earned wages, including overtime, for all hours worked, were not provided with all meal and rest breaks as required for non-exempt employees, and were improperly denied ERISA benefits because they were designated as part-time employees.  The Action sought various statutory penalties and restitution for unfair competition pursuant to California Business and Professions Code Section 17200 including disgorgement of profits, recovery of pre and post judgment interest, attorneys' fees, and costs.

The Settlement Class consists of "all individuals employed as Site Attendant and/or Floaters by Nexcycle in California at any time from May 23, 2003 and the date of preliminary approval of the settlement by the Court [August 15, 2008], and who do not file a timely request to be excluded from the settlement class." [Doc. No. 29].  Without admitting that class certification is proper, Defendant has stipulated that a Class of all individuals employed as Site Attendant and/or Floaters by Defendant in California may be certified for settlement purposes only.  (Blumenthal Decl. at ¶ 6(b).)

The lawsuit has been actively litigated since the first complaint was filed in April 2007.

---

[5] Leave to add Randall Lewis to the federal Lawsuit was sought when documents concerning Nexcycle's ERISA plan revealed that Randall Lewis may have a claim under ERISA, which could only be brought in federal court, and in order to coordinate these related lawsuits.

1  Depositions of the parties and the relevant witnesses have been conducted.  There has been an

2  ongoing investigation, and Class Counsel obtained relevant discovery, through depositions,

3  interrogatories, document discovery, and extensive review of relevant documents and data,  and

4  highly detailed and extensive information about the case, including Class Member data, data

5  reflecting hours worked by the Class Members, job descriptions and relevant salary information

6  for all positions at issue.

7  The defense of this case by Defendant was aggressive and contentious from the start.

8  Specifically, Plaintiffs and Defendant went through multiple meet and confer sessions and

9  arguments to resolve issues related to discovery and the positions at issue in the litigation and

10  engaged in contested law and motion practice both in this case and the state action.

11  Specifically, in Defendant's view, the Settlement Class Members were paid for all work

12  performed according to the time sheets submitted by the employees, received all benefits

13  required and were provided with all required meal and rest breaks.  While Plaintiffs believed

14  in the merits of their claims, and in fact worked the overtime hours alleged in the complaint, an

15  adverse ruling on any of these issues or on certification could have resulted in a dismissal of all

16  or part of the lawsuit.

17  Plaintiffs and the members of the Class also lacked supporting documentation for their

18  individual overtime hours, creating difficulties in quantification of monetary relief at trial.

19  Finally, Defendant contended that like many other off-the-clock wage cases, individual issues

20  would preclude class certification.  (Blumenthal Decl at ¶ 6(c).)

21  The parties agreed to mediation before nationally recognized labor mediator Mark Rudy.

22  Necessary discovery was provided by Defendant prior to the settlement  negotiations.  There

23  can be no doubt that counsel for both parties possessed sufficient information to make an

24  informed judgment regarding the likelihood of success on the merits and the results that could

25  be obtained through further litigation.  (Blumenthal Decl at ¶ 7(a).)

26  The April 2, 2008 mediation session was contentious and intense.  Counsel for the

27  Parties, after settlement negotiations lasting the entire day, reached an agreement, based upon

28

1   Mr. Rudy's expertise as a mediator and the uncertainties of protracted litigation.  (Decl.

2   Blumenthal ¶ 7(c).)  By reason of the settlement, Nexcycle has agreed to pay to the Settlement

3   Class members a maximum sum of $ 2.5 million, as payment in full of all of Plaintiffs' claims

4   including Class Counsel's attorneys' fees costs and expenses, the Named Plaintiffs' service

5   awards, payment of the PAGA award, and the cost of class notice and claims administration.

6          After the mediation, the specific terms of the settlement required additional negotiation

7   before the final written agreement could be signed.  Class Counsel then began the process of

8   reviewing the settlement terms and drafting the settlement agreement and exhibits.  Even after

9   the parties reached an agreement in the memorandum of understanding, Class Counsel had to

10  ensure that the terms of the final settlement stipulation were fair to every member of the class

11  and retained the requisite opportunities for notice, exclusion, and objection in accordance with

12  California class action law.  (Decl. Blumenthal  ¶ 7(e).)

13         By the end of June 2008, the settlement agreement was finalized, at which time the

14  preliminary motion requesting Court approval of the settlement was prepared and filed by Class

15  Counsel.[6] [Doc. No. 25].  On August 15, 2008, this Court preliminarily approved the class

16  settlement and ordered that notice of the proposed settlement be disseminated to the members

17  of the Class.  Notice of the settlement providing class members with an opportunity to file a

18  claim for monetary relief,  to opt out, or to object was then mailed on or about September 2,

19  2008  to the list of 2,385 current and former employees who comprise the Class.  (Decl. of

20  Solorzano at ¶¶3-6).  On or before October 14, 2008, a reminder postcard was mailed to class

21  members who had not yet responded.  (Decl. of Solorzano at ¶¶3-6).  The results were that four

22  hundred seventy-eight (478) Class Members submitted timely claims for unpaid work, fifty-six

23  (56) Class Members requested exclusion, and not one Class Member objected to the settlement.

24

25         [6]    A detailed discussion of the background of the case, the major events of the litigation,
    the settlement negotiations, the terms of the proposed Settlement and its benefit to class
26  members is set forth in the Declaration of Norman B. Blumenthal ("Blum. Decl.") submitted
    in support of this Motion.
27

28

(Decl of Solorzano at ¶¶ 8-10).[7]

## II.    THE SETTLEMENT BEFORE THE COURT

In consideration for settlement of this Action and a release of the claims as described in the Stipulation of Settlement, Nexcycle agrees to pay to settle all claims a sum not to exceed Two Million Five Hundred Thousand Dollars ($2,500,000), including Class Counsel's attorneys' fees, costs and expenses, payment of ERISA claims under the Self Correction Method, the named Plaintiffs service awards, the costs of settlement administration, and the PAGA award to the California Labor and Welfare Development Agency ("The Settlement Amount").  (Blumenthal Decl at ¶ 3(a).)  The Class Settlement Amount will be distributed as follows:

The ERISA claim shall be settled by application of the Self-Correction method set forth in the Internal Revenue Service's Revenue Procedure 2006-27, Appendix A, which will result in the establishment of and/or contribution to 401(k)/retirement accounts for eligible Class members in amounts equal to the individual missed deferral opportunities of $209,358.00.[8] Class Members are not required to submit any claim in order to obtain these benefits.  (Decl. Blumenthal, ¶ 3(b).)

The remaining claims for relief alleged in the Action shall be settled for a monetary amount to be paid out of the remainder of the $2.5 million.  The amount of the Maximum Settlement Consideration allocable for the payment of claims shall be the amount remaining ("Net Settlement Consideration") after the payment of the following costs: (i) settlement

---

[7] Given the fact that these employees are for the most part minimum wage employees who collect and sort cans and bottles at recycling centers owned by the Defendant and are highly transient, these results are very good for this type of class.

[8] With respect to the ERISA payments, there are 753 Class Members who were denied ERISA benefits but who were alleged to be eligible for the Nexcycle 401(k) Profit Sharing Plan because these employees completed more that 1,000 hours of service.  See 29 U.S.C. § 1052(a)(1)(A)(ii), (3)(A).

consideration used to fund 401(k) accounts in the total amount of the ERISA Settlement Consideration, attorneys' fees and costs of Class Counsel as approved by the Court, incentive payments to the Named plaintiffs for serving as representative Class Plaintiffs as approved by the Court, the costs, fees, charges and expenses of the claims administration, and payment of $25,000 to the California Labor and Workforce Development Agency pursuant to the Private Attorneys General Act. Eligible Class Members who submit timely claims shall receive their prorata share of the Net Settlement Consideration based upon the total number of work weeks credited to each individual Class Member for weeks worked during the class period as a percentage of the total number of work weeks of all the Class Members as a group worked during the class period. According to the Claims Administrator, a total of 455 claims for unpaid wages are being approved for payment and the total number of work weeks worked for these approved claims is 25,273. (Decl. Solorzano at ¶13). The total number of weeks worked for all class members is 99,703, and therefore, the approved wage claims comprise 25.3% of the total number of work weeks. Based upon these figures, the approximate amount per work week each claimant is entitled to is $15.97, for a total of approximately $403,609.81 to be paid for approved wage claims.

Nexcycle and their counsel will not oppose an attorneys' fees award, including costs incurred by Class Counsel, of 25% of the Maximum Settlement Consideration to compensate Class Counsel for all of the work already performed in this case and all of the work remaining to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented and obtaining dismissal of the actions. (Decl. Blumenthal, ¶ 3(c).)

Subject to Court approval, the Class Representatives Ramon Barcia and Randall Lewis will receive a service award, deducted from the Maximum Settlement Amount, of a sum of $12,000 each for their service as Class Representatives, in addition to their individual claim for a share of the settlement to which they are otherwise entitled through the claims process. (Decl. Blumenthal, ¶ 3(d).)

MEMO OF P&A IN SUPPORT MOTION FOR FINAL APPROVAL OF SETTLEMENT

07 cv 0938 IEG (JMA)

Subject to Court approval, Nexcycle further agrees to pay from the Settlement Amount the reasonable costs of the Claims Administrator associated with the administration of this Settlement equal to the fixed sum of $24,510.44.  The Claims Administrator will be Gilardi & Co., LLC, who has agreed to charge no more than this fixed sum.  (Decl. Blumenthal, ¶ 3(e).)

The settlement is fair, adequate and reasonable to the class and should be finally approved.  (Blumenthal Decl. ¶3(g).)  In sum, this settlement of $2.5 million is an excellent result and provides the Class Members with the opportunity to receive a substantial recovery of thousands of dollars to each claimant.  This result is  particularly remarkable in light of the fact that there were no records showing the precise amount of regular time overtime worked by the Class Members but not compensated by the Defendant.  Further, certification in this case was far from certain in this off-the-clock wage case as some courts have denied class certification in cases involving similar facts.[9]  (Blumenthal Decl at ¶ 3(g).)

## III.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. 2 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) at §11.41, p.11-87.  Court approval of a class settlement is considered at a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement.  See *Manual for Complex Litigation, Second* §30.44 (1993).  During final approval, the court must determine whether the settlement is fair, reasonable and adequate.  *See Officers for Justice v. Civil Service Com'n, etc.*, 688 F.2d. 615, 625 (9th  Cir. 1982) and  Fed. Rules Civ. Proc., rule 23(e).

---

[9]  See *Proctor v. Allsups Convenience Stores, Inc.*, 2008 U.S. Dist. Lexis 33707 (N.D. Tx 2008); *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592 (E.D. La. 2002); *Clausnitzer v. Federal Express Corp.*, 248 F.R.D. 647 (S.D. Fla 2008).

1    Governing the settlement of class actions, the Federal Rules of Civil Procedure, §23 (e)

2    specifically provides:

3    The court may approve a settlement, voluntary dismissal, or compromise that
     would bind class members only after a hearing and on finding that the settlement,
4    voluntary dismissal, or compromise is fair, reasonable, and adequate.

5    F.R.C.P. § 23(e)(1)(c).

6    Class action settlements should be approved where (1) the proposed settlement is fairly

7    and honestly negotiated; (2) serious questions of law and fact exist placing the ultimate outcome

8    of the litigation in doubt; (3) the value of an immediate recovery outweighs the mere possibility

9    of future relief after protracted and expensive litigation; and (4) the parties have determined that

10   the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (5th

11   Cir. 1984); *Marcus v. State of Kansas*, 209 F. Supp. 2d 1179 (D.Kan. 2002); *Lopez v. City of*

12   *Santa Fe*, 206 F.R.D. 285, 288 (D.N.M. 2002). Each of those four criteria is satisfied here.

13   As discussed in detail below, this Settlement was reached through arm's-length

14   negotiations and with the assistance of mediation conducted by the preeminent mediator, Mark

15   Rudy on April 2, 2008. The Settlement was negotiated by experienced counsel for the Class

16   who vigorously protected the interests of the Class Members. There were complex legal and

17   factual issues that placed the ultimate outcome of this litigation in doubt. Accordingly, the

18   immediate value of the settlement to the Class Members far outweighs the possibility of relief

19   if this protracted and expensive litigation had continued through trial and appeal. Finally, the

20   considered judgment of all parties to the Settlement is that the Settlement is fair and reasonable

21   in light of the immediate benefit provided by the Settlement to the Class Members.

22   Settlements of disputed claims are favored by the courts. *Waits v. Weller*, 653 F.2d 1288,

23   1291 (9th Cir 1981) ("settlement encouraged in appropriate class action settlements"). In

24   evaluating settlements, the courts have long recognized that compromise is particularly

25   appropriate since such litigation is difficult and notoriously uncertain.

26   Settlement is especially favored in class actions because it minimizes the litigation

27   expenses of all parties and reduces the strain on judicial resources. *Officers for Justice*, *supra*,

28

9

688 F.2d at 625 ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Dept. Of Energy Stripper Well Exemption Litig.*, 653 F.Supp. 108, 115 (D.Kan.1986) ("It is in the interests of the courts and the parties that there should be an end to litigation and the law favors the peaceful settlement of controversies.")

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, *supra*, 688 F.2d at 625. Under this standard, the court must decide whether the proposed settlement falls within the range of reasonable settlements, taking into account that settlements are compromises between the parties reflecting subjective, unquantifiable judgments concerning the risks and possible outcomes of litigation. *Id.*

In cases such as this one, courts have repeatedly emphasized that there is a strong initial presumption that the compromise is fair and reasonable. *In re Heritage Bond Litig.*, 2005 U.S. Dist. Lexis 13555, at *11 (C.D. Cal. 2005). Courts are advised not to adjudicate the merits of the action, nor substitute their judgment for that of the parties who negotiated the settlement, nor should they reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement. *Id.*, at *11; *Officers for Justice*, *supra*, 688 F.2d at 625.

The essential evaluation is whether, given the risks of litigation and the range of probable results, the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *Officers for Justice*, *supra*, 688 F.2d at 625; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Here, the facts and circumstances compel the conclusion that the proposed class settlement satisfies that standard, and should therefore be approved.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    The Test for Fairness

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider some or all of the following factors: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Officers for Justice*, *supra*, 688 F.2d at 625.

The list of factors is not exhaustive and should be tailored to each case. *Id.* at 625. Due regard should be given to what is otherwise a private consensual agreement between the parties. *Id.* The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*, at 625. "**Ultimately, the [trial] court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice**."[10] *Id.*

The question whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'" *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied* 464 U.S. 818 (1983) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger*, 698

---

[10] All emphasis to quotations added and all internal citations omitted unless otherwise indicated.

F.2d at 74; *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985). For example, in *Lyons v. Marrud, Inc.*, [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their position has an important bearing on this case." *Id.* at ¶ 92,520.

**B.      The Settlement Satisfies the Test for Fairness**

       1.      <u>The Investigation and Discovery are Sufficient to Allow Counsel and the Court to Act Intelligently</u>

The stage of the proceedings at which this settlement was reached militates in favor of final approval of the settlement. The agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the monetary results that could be obtained through further litigation. There was no need for continued litigation simply to reaffirm what was already known by the negotiating parties.

During the relevant time period of 2003 through 2008, Defendant was in the business of recycling aluminum, glass and plastic through small kiosks or trailers, usually located behind large grocery stores or other retail stores. The recycling sites were manned by "Site Attendants" or "Floaters" who received the recyclables[11], weighed the materials, and paid clients with cash or credit according to the weight and material price. The recycled materials were then stored and compressed at the recycling sites to be periodically picked up by the Defendant. These employees were required to perform a series of tasks before the site could be opened for the

---

   [11]   There is no meaningful difference between the work performed by Site Attendants and Floaters. Site Attendants are employees who have a regular recycling site and Floaters are those employees who work at different sites as needed and directed by Defendant.

1   public and after the site was closed.  Plaintiffs contended that these employees were paid wages

2   according to the schedule for the site, which did not account for the actual time spent

3   performing the opening and closing tasks.  In addition, Plaintiffs contend that they were denied

4   certain profit-sharing 401k benefits to which they were entitled.

5         Defendant opposed these claims, and argued that the employees were paid according to

6   the time-sheets submitted and signed by the employees, and that these employees were not

7   entitled to the profit-sharing 401k benefits.  Moreover, Defendant contended that any unpaid

8   time was idiosyncratic and that class certification of this action was not warranted.  The defense

9   of these cases by Defendant was aggressive and contentious from the start.  Of the defenses

10   asserted by Defendants, the factual defenses asserted to deny the unpaid wage allegations and

11   to demonstrate the lack of commonality between sites and employees presented the most serious

12   threats to the claims asserted.  (Blumenthal Decl at ¶8(c).)  Plaintiffs obtained information

13   concerning the positions themselves, including the job duties and time keeping policies, as well

14   as documentation concerning Defendant's benefit plans and the dates of employment and

15   compensation paid to each class member.  The parties then decided to use the services of a

16   mediator to see if the case could be resolved, and engaged Mark Rudy for this purpose.

17         Class Counsel has litigated similar class action cases against other employers, including

18   off-the-clock and benefits cases on behalf of employees.  (Blumenthal Decl at ¶2.)  Although

19   Plaintiffs and Class Counsel believed that their case had merit, they recognized the potential

20   risks, both sides would face if litigation of this action continued.   As the federal court recently

21   held in  *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D.Cal. January 27  2007),

22   where the parties faced uncertainties similar to those in this litigation:

23           In light of the above-referenced uncertainty in the law, the risk, expense,
        complexity, and likely duration of further litigation likewise favors the settlement.

24           Regardless of how this Court might have ruled on the merits of the legal issues,
        the losing party likely would have appealed, and the parties would have faced the

25           expense and uncertainty of litigating an appeal. "The expense and possible
        duration of the litigation should be considered in evaluating the reasonableness

26           of [a] settlement." See *In re Mego Financial Corp. Securities Litigation*, 213 F.3d
        454, 458 (9th Cir. 2000). Here, the risk of further litigation is substantial.

27

28

*Id.* at *12.

Detailed mediation briefs were researched and prepared. Accounting experts were engaged by the parties to prepare different calculations of the damages under possible outcome scenarios. (Blumenthal Decl at ¶7(a).)

During the mediation, which was both contentious and arm's-length, Defendant vigorously disputed liability, and especially whether Defendant failed to pay the class members for all hours worked, and disputed the number of hours alleged to have been unpaid. Moreover, Defendant disputed that the class could be certified because individual issues predominated as to the policies and practices utilized at each site location and each district. For example, Defendant argued that the facts concerning each employee varied in that certain recycling sites were not busy, required different opening and closing procedures or had two attendants working at the site. While Plaintiffs maintained that the ERISA claims were certifiable, Courts have denied class certification in similar off-the-clock wage claims, so class certification of the claims in this action would have been hotly disputed and was by no means a foregone conclusion. (Blumenthal Decl at ¶7(b).)

Based on the complexity of the case, the novelty of the legal issues, the substantial risks and uncertainty of the outcome on both liability and certification issues, as well as the need to establish damages in contravention of the signed employee time sheets, Plaintiffs believe that the result is an excellent one and is more than fair and in the best interests of the Class Members. There can be no doubt that counsel for both parties possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation, given the relative strengths and weaknesses of their positions. (Blumenthal Decl. at ¶ 7(d).)

### 2.   The Settlement Was Reached Through Arm's Length Bargaining

This settlement was the result of arm's-length negotiations as well as formal and informal settlement conferences between the parties through their respective attorneys. Through

1   extensive formal and informal discovery procedures, Defendant disclosed confidential

2   information relating to their organization, Defendant's benefit plans, the employment positions,

3   the size of the putative class, the hours recorded, compensation ranges and the total number of

4   workweeks for the Class.  After comprehensive legal and factual analysis, including the factual

5   and legal defenses asserted and prepared by Defendant, Class Counsel was prepared to move

6   for class certification, and therefore possessed sufficient information for intelligent evaluation

7   of the case for purposes of settlement.  (Blumenthal Decl at ¶7).

8        Prior to the initiation of settlement discussions, Class Counsel reviewed and analyzed

9   the case, and determined the conditions of settlement which would be fair and reasonable to the

10  Class.  Class Counsel is experienced in the types of settlement appropriate to resolve these wage

11  and benefit claims, as Class Counsel has previously litigated and settled many other

12  employment actions.  Initial informal settlement discussions were productive and encouraged

13  both parties to further analyze their positions and to pursue settlement.  (Blumenthal Decl. at

14  ¶7.)

15       Following this discovery and discussion between counsel, the parties agreed to

16  mediation before Mark Rudy, one of the preeminent mediators for wage and hour class actions.

17  The all-day mediation session held on April 2, 2008 was intense, with neither side giving

18  ground throughout the entire day.  At the end of the day, after his independent review of the

19  facts in this case, Mr. Rudy determined the amount that he believed was fair, reasonable, and

20  adequate, and recommended a settlement amount to the parties as the mediator's proposal that

21  was not subject to further negotiation.  Counsel for the parties, after vigorous negotiations, both

22  agreed to accept the mediator's proposal, which was given great weight by the parties given Mr.

23  Rudy's expertise as a mediator and the uncertainties and cost of the years of litigation the parties

24  faced if the mediators' nonnegotiable proposal was not accepted.  (Blumenthal Decl. at  ¶7.)

25  Most importantly, Plaintiff and Class Counsel believe that this settlement is fair, reasonable and

26  adequate.

27       By reason of the settlement, Nexcycle has agreed to pay to the Settlement Class members

28

MEMO OF P&A IN SUPPORT MOTION FOR FINAL APPROVAL OF SETTLEMENT

1    a maximum sum of $ 2.5 million, as payment in full of all of Plaintiffs' claims arising from the

2    events described in the Complaint including Class Counsel's attorneys' fees costs and expenses,

3    the Named Plaintiffs Enhancements, payment of the PAGA award, and the cost of class notice

4    and claims administration.

5       After the mediation, the specific terms of the settlement required additional negotiation

6    before the final written agreement could be signed.  Class Counsel began the process of

7    reviewing the settlement terms and drafting the settlement agreement and exhibits.  Even after

8    the parties reached an agreement, Class Counsel had to ensure that the terms of the Settlement

9    were fair to every member of the class and contained the requisite opportunities for notice,

10   exclusion, and objection in accordance with California class action law.  By the end of June

11   2008, the settlement agreement was finalized and executed, at which time the preliminary

12   motion requesting Court approval of the settlement was prepared and filed by Class Counsel.

13   On August 15, 2008, this Court preliminarily approved the class settlement as fair, reasonable

14   and adequate, and ordered that notice of the proposed settlement be disseminated to the

15   members of the Class.  Notice of the settlement providing class members with an opportunity

16   to opt out or object was then mailed on or about September 2, 2008 to the 2,385 employees who

17   comprise the Class.  (Blumenthal Decl at ¶7.)  In response to the notice, not one Class Member

18   has objected to the proposed settlement.  Plaintiff and Class Counsel believe that this settlement

19   is fair, reasonable and adequate.  (Blumenthal Decl at ¶3(d) and ¶4.)

20

21            3.     Counsel is Experienced in Similar Litigation

22       Class Counsel in this matter has extensive class action experience in many fields and has

23   represented thousands of persons nationwide in actions including labor and overtime litigation,

24   securities shareholder litigation, constitutional challenges to state and local statutes, collateral

25   protection insurance cases, consumer refund actions and tobacco litigation.  An exhaustive list

26   of previous and current class action cases managed and settled by the Class Counsel in this

27   action is provided to the Court in the Declaration of Norman Blumenthal submitted in support

28

MEMO OF P&A IN SUPPORT MOTION FOR FINAL APPROVAL OF SETTLEMENT

07 cv 0938 IEG (JMA)

1   of this motion.  Class Counsel have participated in every aspect of the settlement discussions

2   and have concluded the settlement is fair, adequate and reasonable and in the best interests of

3   the Class.  (Blumenthal Decl. at ¶ 2 and ¶ 3(d).)

4

5          4.    <u>There Are No Objectors to the Settlement and Few Opt-Outs</u>

6        After dissemination of the class notice to the 2,385 members of the Class, which

7   provided each class member with the terms of the settlement, **not one class member has filed**

8   **an objection to the settlement** and only fifty-six (56) class members have opted out of the

9   settlement.  (Blumenthal  Decl. at ¶ 4.)  The absence of any objector strongly supports the

10  fairness, reasonableness and adequacy of the Settlement. See *In re Austrian & German Bank*

11  *Holocaust Litigation* 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of

12  objections are received, that fact can be viewed as indicative of the adequacy of the

13  settlement."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d. Cir. 1990) (29

14  objections out of 281 member class 'strongly favors settlement'); *Laskey v. Int'l Union*, 638 F.2d

15  954 (6th Cir. 1981) (The fact that 7 out of 109 class members objected to the proposed

16  settlement should be considered when determining fairness of settlement.)

17       Importantly, every Class Member was given the opportunity to participate in the

18  Settlement under the same terms.  All of the ERISA benefit compensation will be paid without

19  the filing of a claim according to the IRS formula, and there are Four Hundred Seventy-Eight

20  (478) timely claims submitted for unpaid wages. (Declaration of Solorzano at ¶8).  While the

21  number of approved claims represents about 25.3% of the total work weeks, this claims rate is

22  mitigated by several facts.  First, the vested ERISA benefits will be paid without regard to

23  claims.  Second, as argued by Defendant, many employees may have been fully paid for the

24  hours they worked by correcting filling out their time-sheet.  Third, the nature of the

25  employment position at issue, which is a low-level, transitory job, often filled by people who

26  do not have permanent addresses, probably resulted in the submission of fewer claims as

27

28

17

compared to cases involving higher level employment at a bank or insurance company.[12] Given these factors, the 25.3% claims rate for approved wage claims is a more than satisfactory response.[13]

Here, because  not one Class Member objected and the settlement provides substantial monetary relief to the Class, the Court can conclude that the settlement is fair, reasonable and adequate.

>   5.   The  Risk, Expense, Complexity, and Likely Duration of Further Litigation

The complexities and duration of further litigation cannot be overstated.  As discussed above, Defendant asserted substantial and real defenses to this action.  Even if Plaintiffs were successful on class certification and at trial, there is little doubt that Defendant would post a bond and appeal in the event of an adverse judgment.  A post-judgment appeal by Defendant would have required many more years to resolve, assuming the judgment was affirmed.  If the judgment was not affirmed in total, then the case could have dragged on for years after the appeal.  The benefits of a guaranteed recovery today, of the very remedy that Plaintiff would seek at trial, outweigh an uncertain result three or more years in the future.  (Blumenthal Decl. at ¶ 8(a).)

Both the Plaintiffs and Class Counsel recognize the expense and length of a trial in this

---

[12]  Indeed, while Plaintiffs Lewis and Barcia were reliable and responsive individuals, other employees interviewed by Class Counsel were often virtually homelss, living in transient hotels and moving from job to job.

[13]  There are numerous class action decisions approving settlements with far lower claims rates. See e.g. *Williams v, MGM-Pathe*, 129 F.3d 1026, 1027 (9th Cir. 1997) ($3,300 in claims submitted against $4.5 million settlement fund); *West Virginia v. Chas Pfizer & Co.*, 314 F.Supp 710 (S.D.N.Y. 1970) (claims rate of .04% approved); *Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.*, 322 F.Supp. 834 (E.D. Pa 1971) (out of 243,000 class members, 1,765 claims were filed, which is .72%); *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. Lexis 5040, *5 (N.D. Cal. 2008) (lees than 1% claims rate); *Chavez v. Netflix*, 162 Cal. App. 4th 43, 49 (2008) (12.6% claims rate).

action against Defendant through possible appeals which could take at least another three years. Class Counsel also have taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this Action.  Class Counsel are also mindful of and recognize the inherent problems of proof under  the claims asserted in the Action and the alleged defenses thereto. Costs would have mounted and recovery would have been delayed if not denied, thereby reducing the benefits of an ultimate victory.  Plaintiffs and Class Counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class and each of the Settlement Class Members.  Based upon their evaluation and experience, Class Counsel have determined that the settlement set forth in the Stipulation is in the best interest of the Class.  (Blumenthal Decl at ¶8(b).)

Similarly, Defendant has concluded that settlement of this Action is desirable in the manner and upon the terms and conditions set forth in the Stipulation in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.  There can be little doubt that the agreed upon settlement of claims is the most efficient and cost-effective method to provide refunds to the members of the Class who are current and former employees of Defendant.

### 6.   The Amount Offered in Settlement

The Settlement in this case of $2.5 million represents a substantial benefit for the Class. The ERISA claims will pay out at 100% of the amount due under the Internal Revenue Service calculation method.   The remaining claims to compensate for the amount due for the nonpayment of wages were calculated by Wesley Nutten, Plaintiffs' damage expert. The hourly rate used was the straight time rate of $8.69.  The number of workweeks involved was 90,025 for the Class Period.  Each one (1) hour per workweek for "off-the-clock" time for the Class equals $780,879.33 for the Class Period.  Each missed meal break per work week for the Class equals $780,879.33 for the Class Period.  Each missed rest break per work week for the Class equals $780,879.33 for the Class Period.  As a result, the Defendant was subject to unpaid wage

claims at a rate of $2,342,637.99 for the Class Period for the combination of one off-the-clock hour, one missed meal break, and one missed rest break per workweek.

The settlement of $2,500,000 after deduction of the PAGA payment of $25,000 and the ERISA payment of $209,358 equals $2,265,642 which is nearly a full recovery assuming the above wage estimates could be proven at trial. (Blumenthal Decl at ¶8(d).)  This recovery is well in excess of the 25% to 35% of the actual estimated loss to the settlement approved in *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D.Cal. Jan. 27  2007).  As a result, the Settlement provides the Class with nearly the same recovery as would have been sought at trial and a larger recovery than obtained in similar litigation.  (Blumenthal Decl at ¶8(d).)

The Claims Administrator has determined that approved claims have been submitted for 25.3 % of the total workweeks, representing a total payout of $403,609.81 for the unpaid wage portion of the settlement.

## V.   CONCLUSION

For the reasons stated herein and in the accompanying declarations and lodgments, Plaintiffs respectfully submit that the proposed settlement satisfies the standard of fairness established in both California and the federal courts and should therefore be finally approved.

Dated: January 30, 2009          BLUMENTHAL, NORDREHAUG & BHOWMIK

By: *s/Norman B. Blumenthal*
      Norman B. Blumenthal, Esq.
      Attorneys for Plaintiff and the Class

      UNITED EMPLOYEES LAW GROUP
      Walter Haines, Esq.
      65 Pine Ave, #312
      Long Beach, CA 90802
      Telephone: (562) 256-1047
      Facsimile: (562) 256-1006

K:\D\NBB\Lewis v. Nexcycle\Final Approval\p-Memorandum - Final Approval.wpd

MEMO OF P&A IN SUPPORT MOTION FOR FINAL APPROVAL OF SETTLEMENT