# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON BARCIA; MATTHEW CARTER, | CASE NO. 07cv938 - IEG - JMA |
| Plaintiff, | Order Granting |
| | (1) Final Approval of Class Settlement |
| vs. | (2) Entry of Final Judgment |
| | (3) Award of Attorneys' Fees |
| CONTAIN-A-WAY, INC., | (4) Award of Service Award to Class Representatives |
| Defendant. | [Doc. Nos. 30, 31] |

On February 2, 2009, plaintiffs filed a motion seeking (1) final approval of class settlement; (2) entry of final judgment; (3) award of attorneys' fees; and (4) award of service awards to class representatives. There have been no objections to the settlement. Defendant Contain-A-Way Inc., filed a notice of non-opposition.

## BACKGROUND

### I.      Factual Background

From 2003 until 2008, defendant Contain-a-Way, Inc., doing business as Nexcycle, operated a business which recycled aluminum, glass, and plastic using small kiosks or trailers located behind large grocery stores or other retail stores. The recycling sites were manned by "Site Attendants" or "Floaters" who received the recyclables, weighed the materials, and paid clients with cash or credit

according to the weight and material price.[1]  Nexcycle stored the recyclables at the recycling sites and picked up the matter up periodically.  The company required employees to perform a series of tasks before opening and after closing the site to public, but allegedly failed to compensate Site Attendants and Floaters for this pre-opening and post-closing work.  In addition, Plaintiffs contend that they were denied certain profit-sharing 401k benefits to which they were entitled.

## II.    Procedural Background

On April 19, 2007, Plaintiff Randall Lewis filed <u>Randall Lewis, et al. v. Contain-A-Way, et al.</u>, civil action no. 37-2007- 00065322,  in Superior Court for the County of San Diego, on behalf of himself and all other similarly situated site attendants. (Blumenthal Decl at ¶ 6(a).)  Lewis sought unpaid wages and penalties for missed rest breaks.

On May 23, 2007, Plaintiff Ramon Barcia filed the instant action on behalf of himself and all other similarly situated site attendant and floater employees.  Plaintiff seeks unpaid wages and penalties for missed rest breaks as well as a claim for ERISA benefits.

Following extensive discovery in both actions, on April 4, 2008, Barcia amended his complaint to add Randall Lewis as a plaintiff.  Following the amendment, the state action was dismissed without prejudice for the purpose of proceeding solely in the federal court where all claims could be redressed.

The Amended Complaint alleges defendants (1) failed to pay earned wages and overtime compensation; (2) failed to provide rest periods; (3) failed to provide accurate itemized statements; (4) violated California Business and Professions Code §17200 which prohibits unfair competition; (5) failed to pay ERISA benefits; and (6) violated the fair labor standards act, 29 U.S.C. § 216.  Additionally, plaintiffs requested civil damages under California's Private Attorney General Act, Cal. Labor Code §2698.

After extensive discovery and multiple meet and confer sessions, the parties agreed to submit to mediation before nationally recognized labor mediator Mark Rudy on April 2, 2008.  Counsel for parties reached an agreement after a day-long negotiation.  The specific terms of the settlement required additional negotiation.

---

[1] There is no meaningful difference between the work performed by Site Attendants and Floaters.  Site Attendants are employees who work at a regular recycling site and Floaters are employees who worked different sites as needed and directed by defendant.

On August 15, 2008, the Court granted preliminary approval of the settlement. On September 2, 2008, plaintiffs mailed the notice of settlement to 2,385 current and former employees who comprise the class.  The notice provided class members with an opportunity to file a claim for monetary relief, opt out of the settlement, or object to the settlement.  (Solorzano Decl. ¶¶ 3-6.)  On or before October 1, 2008, plaintiffs mailed a reminder postcard to class members who had not yet responded. Id. Only 478 class members submitted timely claims for unpaid work, 56 class members opted out, and no one objected. Id. at ¶¶ 8-10.

## III.    The Settlement

The Settlement Class consists of "all individuals employed as Site Attendant and/or Floaters by Nexcycle in California at any time from May 23, 2003 and the date of preliminary approval of the settlement by the Court [August 15, 2008], and who do not file a timely request to be excluded from the settlement class."  Without admitting class certification is proper, Defendant stipulated that this class may be certified for settlement purposes. (Blumenthal Decl. at ¶ 6(b).)

In consideration for settlement and a release of the claims, Nexcycle agrees to pay the class $2,500,000, including attorneys' fees, payment of ERISA claim, the named Plaintiffs service awards, the costs of settlement administration, and the PAGA award to the California Labor and Welfare Development Agency ("The Settlement Amount"). (Blumenthal Decl at ¶ 3(a).) The Class Settlement Amount will be distributed as follows:

The ERISA claim will be settled by application of the self-correction method set forth in the Internal Revenue Service's Revenue Procedure 2006-27, Appendix A.  This will result in the establishment of and/or contribution to 401(k)/retirement accounts for eligible Class members in amounts equal to the individual missed deferral opportunities, amounting to $209,358.[2]  Class Members are not required to submit a claim to obtain these benefits. (Decl. Blumenthal, ¶ 3(b).)

The amount allocable for the payment of the remaining claims shall be the amount remaining ("Net Settlement") after the payment of the following costs: (i) funding for the 401(k) accounts to settle the ERISA claims; (ii) Court approved attorneys' fees and costs; (iii) incentive payments to the

---

[2] There are 753 Class Members who were denied ERISA benefits but who were alleged to be eligible for the Nexcycle 401(k) Profit Sharing Plan because these employees completed more that 1,000 hours of service. See 29 U.S.C. § 1052(a)(1)(A)(ii), (3)(A).

class representatives; (iv) the costs, fees, charges and expenses of the claims administration; and (v) payment of $25,000 to the California Labor and Workforce Development Agency pursuant to the Private Attorneys General Act. Eligible class members will receive a *pro rata* share of the Net Settlement calculated by dividing the total number of weeks they by the total number of weeks worked by all the Class Members. There are 455 approved claims for unpaid wages, totaling 25,273 weeks worked. (Decl. Solorzano at ¶13). The total number of weeks worked for all class members is 99,703, therefore, the approved wage claims comprise 25.3%. Based upon these figures, each claimant is entitled to approximately $15.97 per week, totaling $403,609.81 for all claims.

Nexcycle does not oppose an attorneys' fees award of 25% of the total settlement, which includes Class Counsel's costs. Further, Nexcycle agreed the class representatives should receive a service award of $12,000 each in addition to their individual claim. (Decl. Blumenthal, ¶ 3(d).) Finally, Nexcycle agrees to pay, from the Settlement Amount, the reasonable costs of the Claims Administrator equal to the fixed sum of $24,510.44. The Claims Administrator will be Gilardi & Co., LLC, who has agreed to charge no more than this fixed sum. (Decl. Blumenthal, ¶ 3(e).)

## DISCUSSION

### A.    The Settlement

Federal Rule of Civil Procedure 23(e)(1) requires the Court to determine whether a settlement is "fair, reasonable, and adequate." In making this determination, the Court must consider a number of factors:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel . . . and [7] the reaction of the class members to the proposed settlement

Stanton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (quoting Molski  v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003)). In addition, the settlement must not be the product of collusion among the parties. In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).

*a.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity and Likely Duration of Further Litigation*

Plaintiffs recognized two potential weaknesses in their case that weigh in favor of granting class settlement. First, plaintiffs lacked documentation supporting their individual overtime hours

claims, creating a potential difficulty proving damages.  Second, plaintiffs noted other courts have denied class certification in other  off-the-clock wage cases involving similar facts.  See Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278 (N.D. Tex. 2008)(decertifying a class because individual issues predominated); Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592 (E.D. La. 2002)(finding individual issues predominated); Clausnitzer v. Federal Express Corp., 248 F.R.D. 647 (S.D. Fla. 2008) (same).

The potential complexity and possible duration of trial also weigh in favor of granting final approval.  Plaintiffs acknowledge the difficulties of proving damages, recognize the uncertainty of outcome, and believe defendant would appeal in the event of adverse judgment.  A post-judgment appeal would require many years to resolve and delay payment to class members.  Plaintiffs believe the benefits of a guaranteed recovery today outweigh an uncertain future result.  Accordingly, plaintiffs argue, and the Court agrees, the actual recovery confers substantial benefits on the class that outweigh the potential recovery through full adjudication.

b.     The Amount Offered in Settlement

The Settlement offered in this case is $2.5 million.  The settlement pays 100% of the ERISA claims under the Internal Revenue Service calculation method.  The remaining claims, for nonpayment of wages, were calculated by plaintiffs expert.  The expert made the calculation by assuming an hourly rate of $8.69 and a total of 90,025 work weeks.  Each one hour per workweek for "off-the-clock" time for the class equals $780,879.33.  Each missed rest break equaled $780,879.33 and each missed meal break equals $780,879.33.  Therefore, defendant was subject to claims at rate of $2,342,637.99 for the Class period for a combination of one off-the-clock hour, one missed meal break, and one missed rest break per week.

The settlement, after the deduction of the $25,000 PAGA payment and the $209,358 ERISA payment equals $2,265,642.  This recovery is well in excess of the 25% to 35% benchmark established in Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007).  Under the settlement defendant will only pay for claims made, totaling $403,609.81.  Even if the Court only considers the actual payment, when combined with the ERISA claims, this settlement still falls above the 25% benchmark.  This factor weighs in favor of granting final approval of the settlement.

*c.      The Extent of Discovery Completed and the Stage of the Proceedings*

The stage of the proceedings at which this settlement was reached militates in favor of final approval of the settlement.  Counsel conducted extensive discovery and has sufficient information to make an informed decision about the settlement.  Plaintiffs obtained information concerning the positions, the job duties, and documentation concerning defendant's benefit plans.  Plaintiffs also retained a damages expert, Wesley Nutten, to evaluate the claims.

Further, both sides engaged in a mediation session, prepared lengthy mediation briefs, and hired accounting experts to prepare calculations of the damages under possible outcome scenarios. During the mediation, which was both contentious and arm's-length, defendant disputed that the class could be certified because individual issues predominated as to the polices and practices utilized at each site location and district.  Plaintiffs had opportunity to evaluate the claim, conduct discovery, and negotiate a reasonable settlement; therefore, this factor weighs in favor of granting approval.

*d.      Experience and View of Counsel*

Class counsel has extensive experience in many class action matters, including may wage and hour class actions.  (Decl. Blumenthal, ¶ 4.)  Counsel believes the settlement is fair and adequate; which weighs in favor of approval.

*e.      The Reaction of Class Members to the Proposed Settlement*

After dissemination of the class notice to the 2,385 members of the class, which provided each class member with the terms of settlement, not one class member has filed an objection to the settlement and only fifty-six class members opted out of the settlement.  The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement.  See In re Austrian & German Bank Holocaust Litigation, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-119 (3d Cir. 1990)(finding 29 objections out of a 281 member class "strongly favors settlement").

Importantly, every class member was given the opportunity to participate in the settlement under the same terms.  All of the ERISA benefit compensation will be paid without the filing of a claim under the IRS formula, and there are 478 timely claims submitted for unpaid wages.  (Solorzano

Decl. ¶ 8.)  While the number of approved claims represented about 25.3% of the total work weeks, this claims rate is mitigated by several factors.  First, the ERISA benefits will be paid without the need to make claims.  Second, many employees may have been fully paid for the hours they worked.  Third, the nature of the employment position at issue – a low-level, transitory job, often filled by people without a permanent address – probably resulted in the submission of fewer claims than average. Fourth, other class settlements have been approved with lower claim rates.  See Williams v. MGM-Pathe, 129 F.3d 1026, 1027 (9th Cir. 1997)(approving a settlement in which $3,300 in claims were submitted against a $4.5 million fund); West Virginia v. Chas Pfizer & Co., 314 F. Supp. 710 (S.D.N.Y. 1970)(approving a settlement with a .04% claims rate).

*f.      Collusion Between the Parties*

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of the class.  Stanton v. Boeing Co., 327 F.3d 938, 960 (9th Cir. 2003).  Because there is no evidence of overt misconduct, the Court's inquiries whether the aspects of the settlement that lend themselves to self-interested action "strictly comport with the substantive and procedural standards designed to protect the interests of the class members."  Id.  In this case, the aspects of the settlement susceptible to self-interested misconduct are the Class Representative awards and attorneys' fees.

The $12,000 incentive award for each class representative does not appear to be the result of collusion.  The fairness of settlement awards is evaluated using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ."  Stanton, 327 F.3d 938, 977 (9th Cir. 2003)(quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).  Recently, a district court approved a $25,000 incentive award in a similar case.  See Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007).  In the instant case, plaintiff have protected the interest of the class and exerted time and effort by maintaining two separate lawsuits, conducting extensive discovery, hiring experts to analyze discovered data, and engaging in contentious settlement negotiations.  The class benefitted from these actions and the awards do not appear to be the result of collusion.

1    Finally, the attorneys' fees also do not appear to be the result of collusion.  Parties may

2    simultaneously negotiation the merits and attorneys' fees.  Stanton, 327 F.3d at 971.  In wage and hour

3    cases, "[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases."

4    Hopson v. Hanesbrands Inc., 2008 WL 3385452 at *3 (N.D. Cal 2008) (citing Hanlon, 150 F.3d at

5    1029).  Given this benchmark, these fees seem reasonable and not the result of collusion.

6    All factors weigh in favor of granting final approval of the settlement.

7    **B.    Attorneys' Fees and Costs**

8    The United States Supreme Court has ruled that the parties to a class action properly may

9    negotiate not only the settlement of the action itself, but also the payment of attorneys' fees.  See

10   Evans v. Jeff D., 475 U.S. 717, 734-35, (1980).  As part of the settlement, the parties agreed to an

11   award of attorneys' fees equal to 25% of the total settlement value.  The requested fee falls at the

12   bottom end of the Ninth Circuit's benchmark of 25% to 40% of a common fund and is fair

13   compensation for undertaking such complex, risky and time-consuming litigation on a contingent

14   basis. See Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

15   "When a fee is set by a court rather than by contract, the object is to set it at a level that will

16   approximate what the market would set. . . . The judge, in other words, is trying to mimic the market

17   in legal services." Gaskill v. Gordon, 160 F.3d 361, 363 (7th Cir. 1998).

18   The Ninth Circuit has embraced the common fund concept.  Paul, Johnson, Alston & Hunt v.

19   Gaulty, 886 F.2d 268, 271 (9th Cir. 1989).  The Court evaluates five factors to determine if the award

20   is reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality

21   of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5)

22   awards made in similar cases.  In re Omnivision Technologies, Inc., 2007 WL 4293467 at *9 (N.D.

23   Cal., Dec. 6, 2007)  First, there is little question the result achieved is excellent; plaintiffs obtained

24   over 96% of estimated damages.  Second, as detailed above, the risks of litigation were real and

25   substantial.   Third, the complexity of the case, coupled with the length and duration fo the

26   negotiations, militated in favor of approval of fees.  Fourth, class counsel took this case under a

27   contingent fee basis, advanced all costs in the litigation, and had to forego other financial opportunities

28   to work on this case.

The fifth factor – awards made in similar cases – also militates towards approving fees.  On December 11, 2008, in <u>Gruender et al. v. First American Title</u>, the Honorable David C. Velasquez awarded a 25% fee request in an overtime class action. (Declaration of Blumenthal at ¶11.)  On November 12, 2008, in <u>Connell v. Sun Microsystems</u>, the Honorable Steven Brick awarded a 30% fee request in an overtime class action. (Declaration of Blumenthal at ¶11.) On March 24, 2008, in <u>Karim v. Banc of America Investment Services</u>, the Honorable Alicemarie Stotler awarded a 25% fee request in an overtime class action. (Declaration of Blumenthal at ¶11.) On July 9, 2008, in <u>Langille v. EMC Corp.</u>, the Honorable Marilyn Huff awarded a 25% fee request in an overtime class action. (Declaration of Blumenthal at ¶11.)  Further, in the following cases, state and federal courts awarded fees of 25% of the total settlement amount: <u>Lewis v. Starbucks Corp</u>, 2008 WL 4196690 (E.D. Cal. September 11, 2008) (approving a 25% fee request in an overtime class action); <u>Woo v. The Home Loan Group</u>,  2008 WL 3925854 (S.D. Cal. August 25, 2008) (awarding 25%).

Because the attorneys' fees and costs fall within the Ninth Circuit's benchmark and other courts have awarded similar fees in similar cases, the Court approves the attorneys' fees.

**C.    Class Representative Service Awards**

Plaintiffs Barcia and Lewis request a service award of $12,000 each.  Defendant has agreed to the payment of these service awards.  Class counsel avers the class representatives provided valuable information critical to counsel's understanding of the case, put counsel in contact with other class members, appeared at depositions, diligently responded to defendant's numerous discovery requests, and promptly responded to correspondence from Class Counsel.

The payment of service awards to successful class representatives is appropriate and the amounts of $25,000 are well within the currently accepted ranged.  <u>See, e.g.</u>, <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); <u>In re Dun & Bradstreet Credit Servs. Customer Litig.</u>, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $ 55,000, and three incentive awards of $ 35,000); <u>Glass v. UBS Fin. Servs.</u>, 2007 U.S. Dist. LEXIS 8476 at *51-*52 (N.D.Cal. Jan. 27 2007) (awarding $25,000 service award in FLSA overtime wages class action).  Therefore, the Court GRANTS the motion for service awards.

//

**CONCLUSION**

For the foregoing reasons, the Court GRANTS final approval of the class settlement, award of attorneys' fees, and award of class service awards.  The Court ORDERS the clerk to enter final judgment in this action.

IT IS SO ORDERED.

DATED:  March 6, 2009

_____
IRMA E. GONZALEZ, Chief Judge
United States District Court

- 10 -

07cv938 - IEG - JMA