1

2

3

4

5

6

7

8                   **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   RAMON BARCIA, on behalf of himself and          CASE NO. 07cv938-IEG-JMA
     all persons similarly situated,

12                                                    **ORDER GRANTING IN PART**
                                       Plaintiff,    **AND DENYING IN PART**
13                                                    **PLAINTIFFS' MOTION FOR**
             vs.                                      **DEFENDANT TO PROVIDE**
14                                                    **EVIDENCE OF COMPLIANCE**
                                                      **WITH SETTLEMENT**
15                                                    **AGREEMENT**
     CONTAIN-A-WAY, Inc.,
16                                                    **(Doc. No. 37)**
                                       Defendant.
17

18

19           On July 22, 2009, Plaintiffs filed the instant motion for an order directing Defendant to provide

20   evidence to the Court of compliance with the settlement agreement that led to the dismissal of this

21   case on the merits.  (Doc. No. 37.)  Plaintiffs also seek ERISA civil enforcement penalties, as further

22   described below.  Defendant has filed an opposition and Plaintiffs have filed a reply.  The Court heard

23   oral argument the motion on Monday, August 31, 2009.

                                       **BACKGROUND**

24   I.      Factual and Procedural Background

25           From 2003 until 2008, defendant Contain-a-Way, Inc., doing business as Nexcycle, operated

26   a business which recycled aluminum, glass, and plastic using small kiosks or trailers located behind

27   large grocery stores or other retail stores.  The recycling sites were manned by "Site Attendants" or

28   "Floaters" who received the recyclables, weighed the materials, and paid clients with cash or credit

according to the weight and material price.[1]  Nexcycle stored the recyclables at the recycling sites and picked up the matter periodically.  The company required employees to perform a series of tasks before opening and after closing the site to public, but allegedly failed to compensate Site Attendants and Floaters for this pre-opening and post-closing work.  In addition, Plaintiffs contend they were denied certain profit-sharing 401k benefits to which they were entitled.

On April 19, 2007, Plaintiff Randall Lewis filed a complaint entitled <u>Randall Lewis, et al. v. Contain-A-Way, et al.</u>, civil action no. 37-2007- 00065322,  in Superior Court for the County of San Diego, on behalf of himself and all other similarly situated site attendants. (Blumenthal Decl. ISO Plt.'s Motion for Final Approval of Class Settlement, Doc. No. 30-4, ¶ 6(a).) Mr. Lewis sought unpaid wages and penalties for missed rest breaks.

On May 23, 2007, Plaintiff Ramon Barcia filed the instant action on behalf of himself and all other similarly situated site attendant and floater employees.  Mr. Barcia sought unpaid wages and penalties for missed rest breaks as well as a claim for ERISA benefits.

After extensive discovery in both actions, on April 4, 2008, Mr. Barcia amended his complaint to add Mr. Lewis as a plaintiff.  Following the amendment, Mr. Lewis dismissed the state action without prejudice in order to proceed solely in the federal court where all claims could be redressed.

The Amended Complaint alleges Defendants (1) failed to pay earned wages and overtime compensation; (2) failed to provide rest periods; (3) failed to provide accurate itemized statements; (4) violated California Business and Professions Code §17200 which prohibits unfair competition; (5) failed to pay ERISA benefits; and (6) violated the fair labor standards act, 29 U.S.C. § 216. Additionally, plaintiffs requested civil damages under California's Private Attorney General Act, Cal. Labor Code §2698.

After extensive discovery and multiple meet and confer sessions, the parties agreed to submit to mediation before nationally recognized labor mediator Mark Rudy on April 2, 2008.  The parties reached an agreement after day-long negotiations.  The stipulated settlement agreement contained the following provision: "The Parties agree that upon final approval by the Court, this Stipulation shall

---

[1] There is no meaningful difference between the work performed by Site Attendants and Floaters.  Site Attendants are employees who work at a regular recycling site and Floaters are employees who worked different sites as needed and directed by defendant.

be enforceable by the Court and the Court shall retain exclusive and continuing equity jurisdiction of this action over all Parties and Class Members to interpret and enforce the terms, conditions, and obligations set forth in this Stipulation." [Stipulation of Class Action Settlement ("Settlement Agreement"), Ex. 1 to Blumenthal Decl. ISO Motion for Order ("Blumenthal Decl."), Doc. No. 37-3, pp. 23-24.] The Settlement Agreement also provided that Gilardi & Co., LLC would serve as claims administrator "for the purpose of administering timely claims made by eligible Class Members in accordance with this Stipulation." (Settlement Agreement at 12.)

On August 15, 2008, the Court granted preliminary approval of the settlement. On September 2, 2008, plaintiffs mailed the notice of settlement ("Class Notice") to 2,385 current and former employees who comprise the class. The Class Notice provided class members with an opportunity to file a claim for monetary relief, opt out of the settlement, or object to the settlement. (Solorzano Decl. ISO Plt.'s Motion for Final Approval of Class Settlement, Doc. No. 30-3, ¶¶ 3-6.) On or before October 1, 2008, plaintiffs mailed a reminder postcard to class members who had not yet responded. Id. Only 478 class members submitted timely claims for unpaid work, 56 class members opted out, and no one objected. Id. at ¶¶ 8-10.

II.      The Settlement

On March 6, 2009 the Court issued an order granting Plaintiffs' motion for: (1) final approval of class settlement; (2) entry of final judgment; (3) award of attorneys' fees; and (4) allowing service awards to class representatives. (Doc. No. 34.) In the Court's separate judgment and order of final approval of the settlement, the Court retained "exclusive and continuing jurisdiction over the Litigation, Plaintiffs, all Class Members and Defendant, for purposes of supervising, implementing, interpreting and enforcing this Order and the Settlement Agreement." [Judgment and Order of Final Approval of the Settlement and Dismissing Action ("Dismissal Order"), Doc. No. 35.]

The Settlement Class consisted of "all individuals employed as Site Attendant and/or Floaters by Nexcycle in California at any time from May 23, 2003 and the date of preliminary approval of the settlement by the Court [August 15, 2008], and who do not file a timely request to be excluded from the settlement class." Without admitting class certification was proper, Defendant stipulated that the class could be certified for settlement purposes. (Blumenthal Decl. ISO Plt.'s Motion for Final

1  Approval of Class Settlement, Doc. No. 30-4, ¶ 6(b).)

2        In consideration for settlement and a release of the claims, Nexcycle agreed to pay the class

3  $2,500,000, including attorneys' fees, payment of the ERISA claim, the named Plaintiffs service

4  awards, the costs of settlement administration, and the "Private Attorneys General Act" award to the

5  California Labor and Welfare Development Agency ("The Settlement Amount"). (Blumenthal Decl.

6  ISO Plt.'s Motion for Final Approval of Class Settlement, Doc. No. 30-4, ¶ 3(a).)

7        The instant motion concerns Defendant's compliance with the settlement terms of the ERISA

8  claim.  The relevant terms of the Agreement state:

9                The ERISA claim shall be settled by application of the Self-Correction
            Method set forth in the Internal Revenue Service's Revenue Procedure
10           2006-27, Appendix A ("the ERISA Settlement Consideration"), which
            will result in the establishment of and/or contribution to
11           401(k)/retirement accounts for eligible Class Members in amounts
            equal to their individual missed deferral opportunities.  To obtain any
12           benefits that may be vested in a 401(k)/retirement account, Class
            Members must contact Fidelity NetBenefits® at www.401k.com or call
13           the Fidelity Retirement Benefits Line at 1-800-835-5097.  Class
            Members are not required to submit any claim in order to obtain those
14           vested benefits.  The remaining claims for relief alleged in the First
            Amended Complaint, which include all claims for violation of the
15           Labor Code, the Business and Professions Code and the Fair Labor
            Standards Act, shall be settled for a monetary amount to be paid out of
16           a settlement fund in a bank account established by a Claims
            Administrator.

17  (Settlement Agreement at 5-6.)

18        The parties calculated the amount of the individual missed deferral opportunities to be

19  $209,358.  There were 753 Class Members who were denied ERISA benefits but who were allegedly

20  eligible for the Nexcycle 401(k) Profit Sharing Plan (the "Plan") because they had completed more

21  than 1,000 hours of service. See 29 U.S.C. § 1052(a)(1)(A)(ii), (3)(A).

22  III.    Establishment of the Retirement Accounts

23        Defendant has provided Plaintiffs with a "Plan History Detail" printout from Fidelity

24  Investments ("Fidelity") purporting to show the transfer of $208,800.14 to a Fidelity Account made

25  on September 11, 2008.  (Ex. 4 to Blumenthal Decl.)  Defendant explains that "[t]he actual amount

26  of the corrective contribution was slightly less than the original amount of $209,358 because there

27  were employees on the original list who were under the age of 21 and therefore did not meet the

28  eligibility requirements."  (Opp. at 1, n. 1.)

The briefing on this motion has also revealed that Mr. Barcia's retirement account became inactive approximately three months after it was established because his account balance of $155.04 was below the Plan's minimum required balance of $1000.   [Comer[2] Decl. ISO Opp. ("Comer Decl."), ¶¶ 4-5.]  Specifically, Defendant contends (1) Fidelity informed Mr. Barcia by letter sent to his address of record that his retirement account balance fell below the Plan's required minimum balance of $1,000, and instructed him to elect a direct rollover of funds if he did not desire a cash payout;[3] (3) Mr. Barcia never contacted Fidelity to request a direct rollover; and (4) Fidelity mailed a payout check to Mr. Barcia at his address of record that was never cashed.  (Opp. at 10; Comer Decl., ¶¶ 4-11.)  Defendant also states that given the relatively small payments into the eligible class members' retirement accounts, the vast majority of those class members probably received "*de minimus*" notifications and cash payouts similar to those Mr. Barcia received.  (Opp. at 10.)

IV.    Relevant Post-Settlement Interactions Between the Parties

On March 24, 2009, Plaintiffs' counsel requested information regarding the establishment of the retirement accounts, specifically asking defense counsel for "confirmation as to the ERISA deposits and notice to the class members of the deposits on their behalf."  (March 24, 2009 email from Norman Blumenthal to Lena Sims, Ex. 2 to Blumenthal Decl.)  Defense counsel responded she did not believe the Settlement Agreement covered such information.  (March 25, 2009 email from Lena Sims to Norman Blumenthal, Ex. 3 to Blumenthal Decl.)

In response, Plaintiffs' counsel requested proof that "each and every ERISA payment has been made and each and every class member for whom a payment was made has been informed of his rights thereto."  (March 25, 2009 email from Norman Blumenthal to Lena Sims, Ex.3 to Blumenthal Decl.)  On April 7, 2009 Plaintiffs' counsel repeated this request and additionally asked for "evidence of how and in what way [eligible class members] will be informed as to the amount in the plan for each of them on an ongoing basis."  (April 7, 2009 email from Norman Blumenthal to Lena Sims, Ex. 4 to Blumenthal Decl.)

---

[2]  Jason Comer declares he is an employee of Fidelity Investments, and is the administrative recordkeeper for the Strategic Materials Employee Retirement Plan.  (Comer Decl., ¶ 1.)

[3]  See Ex. A to Comer Decl. (Doc. No. 41-2.)

1    Defendant responded on April 10, 2009 with the Fidelity "Plan History Detail."  Viewing this

2    response as unsatisfactory, on April 20, 2009 Plaintiffs' counsel made a final request for copies of the

3    eligible class members' individual quarterly benefit statements pursuant to "ERISA 19 USC 1025(a)"

4    and requested that the statements also show the amount of the deposits made into each individual plan

5    account pursuant to the Settlement Agreement.  (April 20, 2009 email from Norman Blumenthal to

6    Lena Sims, Ex. 5 to Blumenthal Decl.)  Defendant did not provide the requested information.

7                                               **DISCUSSION**

8    Plaintiffs contend that despite meeting and conferring with Defendant to determine whether

9    retirement accounts have been properly established pursuant to the parties' settlement of the ERISA

10   claim, Defendant "has refused to provide disclosure of information sufficient to confirm the

11   establishment of and the benefits under the Accounts for each of the eligible Class Members."

12   (Memo. ISO Motion at 1.)  Plaintiffs also claim Defendant's refusal violates certain provisions of

13   ERISA, entitling them to civil penalties.

14   Defendant contends that neither the Settlement Agreement nor the Court's final order required

15   it to provide eligible class members with any information concerning their vested benefits.  As such,

16   Defendant argues this motion is not properly before the Court because Plaintiffs do not allege a breach

17   of the Settlement Agreement or point to any specific language providing for the relief they seek.

18   Moreover, Defendant argues Plaintiffs' motion is a "new cause of action" for ERISA violations that

19   falls outside the Court's continuing jurisdiction to enforce the Settlement Agreement.

20   I.    Jurisdictional Arguments

21         A.    The Court's Jurisdiction to Enforce the Agreement

22   In this case, pursuant to the Settlement Agreement and the Dismissal Order, the Court

23   specifically retained "exclusive and continuing jurisdiction over the Litigation, Plaintiffs, all Class

24   Members and Defendant, for purposes of supervising, implementing, interpreting and enforcing this

25   Order and the Settlement Agreement."  Courts may properly reserve such continuing jurisdiction upon

26   the dismissal of a case.  Sandpiper Vill. Condo. Ass'n v. Louisiana-Pacific Corp., 428 F.3d 831, 841

27   (9th Cir. 2005) ("The requisite independent basis for jurisdiction may be supplied by a provision in

28   the settlement agreement and order that expressly retains jurisdiction in the district court for the

1    purpose of overseeing and enforcing the prior judgment. Such a provision . . . empowers a district

2    court to protect its judgment from a subsequent action that frustrates the purpose of the settlement

3    agreement and order.") Defendant, however, contends the Court does not have continuing jurisdiction

4    in this matter because Plaintiffs have not met their "burden" of demonstrating a breach of the

5    agreement, citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994).

6         Kokkonen allows for a court's continuing jurisdiction where "the parties' obligation to comply

7    with the terms of the settlement agreement ha[s] been made part of the order of dismissal . . .by

8    separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) . . . "

9    and provides that in such cases "a breach of the agreement would be a violation of the order, and

10   ancillary jurisdiction to enforce the agreement would therefore exist." Kokkonen, 511 U.S. at 381.

11   Kokkonen does not, however, require a breach of a settlement agreement as a condition precedent to

12   the Court's exercise of its explicitly-reserved continuing jurisdiction to enforce that agreement. Here,

13   because the plain language of the Court's reservation of continuing jurisdiction does not require a

14   party to show a breach of the agreement before invoking jurisdiction, the Court rejects Defendant's

15   argument.

16        **B.    The Court's Jurisdiction Over Plaintiffs' Newly-Raised ERISA Claims**

17        On April 20, 2009, Plaintiffs' counsel emailed a request for copies of the eligible class

18   members' individual quarterly benefits statements, as required by "ERISA 29 USC 1025(a)."[4]  In

19   making this demand, Plaintiffs further cautioned that "ERISA 29 USC § 1132(c) imposes a penalty

20   of $110 per day on the Plan Administrator for failure to provide such a statement within 20 days

21   following such a request." (Ex. 5 to Blumenthal Decl.)  Plaintiffs now argue that in failing to provide

22   the requested information, Defendant has contravened the mandates of ERISA and is therefore liable

23   for civil penalties pursuant to 29 U.S.C. § 1132(c).[5]

24

25        [4] 19 U.S.C. § 1025 provides ERISA's requirements for the administrator of a pension benefit
     plan to provide statements to plan participants.  The Court does not reproduce the section here because
26   the section is lengthy and its substantive contents are not material to the Court's evaluation of the
     issues Plaintiffs raise in their motion.
27

28        [5] Section 1132 provides for civil causes of action for various ERISA violations.  Section
     1132(c) provides, *inter alia*, for civil penalties against a plan administrator for failure to comply with
     the provisions of  § 1025(a).

1    Defendant characterizes Plaintiffs' contentions as a separate cause of action for alleged

2    violations of ERISA that occurred during the administration of the retirement accounts established by

3    the Settlement Agreement.  Defendant argues this subject matter falls outside the scope of the Court's

4    continuing jurisdiction to enforce the Settlement Agreement.  Plaintiffs do not respond to this

5    contention in their reply brief.

6    Plaintiffs cite to Shop Ironworkers Local 790 Pension Trust v. COFAB Steel Corp., 2009 U.S.

7    Dist. LEXIS 40758, at *3-4 (N.D. Cal. Apr. 30, 2009) for the proposition that "federal courts can

8    enforce settlement agreements when enforcing [them] 'require[s] the application of federal ERISA

9    law.'") (Memo ISO Motion at 2.)  However that case is inapposite because it involved a *separate*

10    *action* to enforce the terms of a settlement agreement that "obligated Defendants to make payments

11    for withdrawal liability pursuant to the applicable provision of ERISA, specifically 29 U.S.C. § 1399."

12    Id. at *6.  The Plaintiffs in Shop Ironworkers did not attempt to raise a new cause action in a case that

13    had already been dismissed.  If Plaintiffs wish to allege new ERISA violations pursuant to the

14    administration of the retirement accounts, they should file a separate claim.  Therefore, Plaintiffs'

15    motion is denied to the extent that it seeks penalties for ERISA violations.

16    II.    Plaintiffs' Requested Disclosures

17    In light of the Court's continuing jurisdiction to supervise, implement, interpret and enforce

18    the Settlement Agreement, it must determine whether the disclosures Plaintiffs seek are required by

19    the Settlement Agreement.  If not, the Court must determine whether the information is otherwise

20    required to ensure the agreement's enforcement. Plaintiffs' briefs set forth broad requests for

21    numerous types of disclosures and other actions on Defendant's part.  At oral argument, Plaintiffs'

22    counsel clarified that he simply desires confirmation that an individual retirement account was

23    established for each eligible class member, a record of the amount funded to each account, and an

24    indication of whether the account holders were sent cash payout checks if their account balances were

25    below the $1,000 account minimum.  The Court accordingly limits its present inquiry to this clarified

26    request.

27    Defendant incorrectly believes it only had an obligation to "establish and/or contribute to a

28    401(k) retirement plan, which it did when it transferred funds to the Plan's Fidelity Investment

Account." (Opp. at 7.) In fact, the Settlement Agreement provides that, "[t]he ERISA claim shall be settled by application of the Self-Correction Method set forth in the Internal Revenue Service's Revenue Procedure 2006-27, Appendix A ('the ERISA Settlement Consideration'), which will result in the establishment of and/or contribution to 401(k)/retirement **accounts** for eligible Class Members in amounts equal to their individual missed deferral opportunities." (Settlement Agreement at 5-6, emphasis added.) The "Plan History Detail" Defendant produced to Plaintiffs does not show that it has established/contributed to individual 401(k) retirement accounts for eligible class members. It merely documents a lump sum transfer that created a pool of money, ostensibly to fund those accounts.

Moreover, the Settlement Agreement contains a "Mutual Full Cooperation" clause which provides, in relevant part:

> The Parties agree to fully cooperate with each other to accomplish the terms of this Stipulation, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Stipulation. The Parties to this Stipulation shall use their best efforts, including all efforts contemplated by this Stipulation and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Stipulation and the terms set forth herein.

(Settlement Agreement at 19-20.) In light of Defendant's contractual obligation to establish and contribute to individual retirement accounts for eligible class members, and pursuant to the Settlement Agreement's Mutual Cooperation clause, the Court ORDERS as follows:

(1)    Defendant shall produce documentation to Plaintiffs' counsel showing that individual 401(k)/retirement accounts were established for all eligible class members. This documentation shall include the name of the individual(s) holding each account, and the corresponding amount funded to each account pursuant to the Settlement Agreement.

(2)    For all individual retirement accounts established pursuant to the Settlement Agreement whose account balances fell below the Plan's $1,000 minimum, and were subsequently liquidated by Fidelity, Defendant shall produce documentation to Plaintiffs' counsel showing the name and address to which each individual cash payout was mailed, and the corresponding amount of each cash distribution check.

(3)    The documentation shall be in the format of Defendant's choosing, so long as it is accurate, legible, and clearly identifies the funds provided to each qualifying class member.

07cv938

(4)     Defendant shall procure this information and produce it to Plaintiffs' counsel[6] no later than **Friday, October 16, 2009**.

This Order does not require Defendant to provide information as to whether the eligible class members cashed their payout checks or locate any class members who have failed to cash their payout checks.   The Class Notice apprised eligible class members of their duty under the Settlement Agreement to pursue  information regarding the exercise of any vested benefits.[7]  This obligation was a bargained-for term of the Settlement Agreement that was of considerable value to Defendant because of the substantial cost and burden involved in sending out additional notices to all eligible class members regarding the exercise of any vested benefits.  The Court finds that any cash distribution checks from liquidated retirement accounts comprised the type of "vested benefits" that eligible class members were affirmatively required to pursue on their own; an onus that logically includes the responsibility to inform Fidelity of their current contact information and to cash any disbursement checks they received.  The Court declines to shift these responsibilities to Defendant.

## CONCLUSION

The Court GRANTS Plaintiffs' motion in part, and DENIES it in part, as discussed herein. Defendant shall produce the documentation the Court has ordered to Plaintiffs' counsel no later than **Friday, October 16, 2009**.

**IT IS SO ORDERED.**

**DATED:  September 23, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[6]  At oral argument, defense counsel requested that the Court allow Defendant to make any required disclosures directly to the Court *in camera* as opposed to producing any information to Plaintiffs.  The Court denies Defendant's request.

[7]  For example the Class Notice clearly states on page 4, "[Y]ou do not have to submit a Claim Form to obtain any vested benefits in any 401(k)/retirement account established in your name to satisfy any missed deferral opportunity.  You may learn whether you have any vested benefits in a 401(k)/retirement account, what those vested benefits are, and how you may exercise those vested benefits by contacting Fidelity NetBenefits at www.401k.com or call the Fidelity Retirement Benefits Line at 1-800-835-5097."  (See Class Notice, Ex. 1 to Blumenthal Decl.)

07cv938